**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CLYDE J. ROBBINS,**

                            **Plaintiff,**

        **v.**                                **1:01-CV-1738**
                                            **(GLS-RFT)**

**LABERGE ENGINEERING & CONSULTING**
**LTD.; and FIRST UNUM LIFE INSURANCE**
**COMPANY OF AMERICA,**

                             **Defendants.**
_____

**APPEARANCES:**                 **OF COUNSEL:**

**FOR THE PLAINTIFF:**

Office of Craig Meyerson         CRAIG MEYERSON, ESQ.
Airport Park
17 British American Boulevard
Latham, NY 12110

**FOR THE DEFENDANTS:**

McNamee, Lochner Law Firm     MICHAEL J. HALL, ESQ.
P.O. Box 459
677 Broadway
Albany, NY 12207

**Gary L. Sharpe**
**U.S. District Judge**

## DECISION AND ORDER

### I. Introduction

Plaintiff Clyde Robbins filed suit in New York State Supreme Court, seeking long-term disability benefits under a group policy established by his employer, defendant Laberge Engineering & Consulting (Laberge), and administered by defendant First Unum Life Insurance Company of America (First Unum).  Citing ERISA preemption (*see* Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461), the defendants removed the action to federal court.[1]  Pending is the defendants' motion for "judgment on the administrative record."  For the following reasons, that motion is GRANTED.[2]

### II. Procedural History

After Robbins sued in State court in 2001, the defendants removed the case and answered, and the parties engaged in limited discovery.  *Dkt. Nos. 1, 2, 14.*  First Unum then filed the current motion on July 16, 2003.

---

[1]Robbins' state-law claims were preempted because they sought payment of plan benefits (*see* 29 U.S.C. § 1132(a)1)(B)), and attorney's fees and costs (*see* 29 U.S.C. § 1132(g)).

[2]Although the court grants the defendants' motion, it also concludes that Laberge is not a proper defendant.  Robbins seeks disability benefits under a policy administered and payable by First Unum, and he asserts no facts suggesting that Laberge was a *de facto* administrator. Only the plan and its administrators may be liable, not the employer. *See Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989).  Accordingly, Laberge is dismissed as a defendant.

*Dkt. Nos. 20-29.*  On August 12, the motion was taken on submit by then-presiding U.S. District Judge Thomas J. McAvoy.  *Dkt. No. 31.*  The case was subsequently reassigned to U.S. District Judge Lawrence Kahn in January 2004, and finally to this court on March 4, 2004.  *Dkt. Nos. 37, 38.*

On December 3, 2004, this court scheduled a motion return for January 20, 2005.  However, on December 31, Robbins filed an unauthorized supplemental memorandum, *Dkt. No. 40*, and the court adjourned the motion to permit First Unum to respond.  It did so on January 26, 2005.  *Dkt. No. 43.*  On February 3, the parties filed supplemental memoranda addressing the impact of a Regulatory Settlement Agreement (RSA) between First Unum and state insurance regulators on the pending motion.  *Dkt. Nos. 44, 45.*  The following day, Robbins filed another unauthorized reply.  *Dkt. No. 46.*  The motion was finally taken on submit on July 21, 2005.

## III.  Background

From 1994 through January 8, 1998, Robbins worked full-time for Laberge as manager of engineering design and as manager of business

development.  (AR 543-44, 551, 558).[3]   He was insured under a Group

Long Term Disability Insurance Policy number 454034 (Policy), originally

issued to Laberge in 1994, and administered and payable by First Unum.

(AR 144-67, 168).

Qualifying as an employee benefits program under 29 U.S.C. § 1002,

the Policy provided disability benefits according to a formula that included,

*inter alia*, monthly earnings and the employee's age at the time of disability

onset.  (AR 146, 155-57).  As relevant, the Policy provided:  "'[d]isability'

and 'disabled' mean that because of injury or sickness the insured cannot

perform each of the material duties of his regular occupation," and "'[p]artial

disability' and 'partially disabled' mean that ... the insured, while unable to

perform all the material duties of his regular occupation on a full-time basis,

is ... performing at least one of the material duties of his regular occupation

or another occupation on a part-time or full-time basis ...."  (AR 152).

In order to qualify for benefits, Robbins was required to give First

Unum notice and initial proof of disability, and, upon First Unum's request,

proof of continued disability and regular treatment by a physician.  (AR 154,

_____

[3]"(AR. )" refers to the administrative record, filed sequentially as FULCL 00117 to
FULCL 00566, *Ex. B, Dkt. No. 20*.

4

163).  Payments were subject to termination if the disability ceased.  (AR

157).  In addition, First Unum retained the option to interview Robbins or to

have him examined by a physician or vocational expert "as often as

reasonably required."  (AR 163).

Robbins was suffering from coronary artery disease, hypertension

and angina, and on January 8, 1998, he underwent emergency double

coronary artery bypass graft surgery following a failed PTCA stent

procedure.  (AR 488-93).  He applied for long-term benefits on April 6,

1998, and his claim was approved.  (AR 462-63, 474, 553).  In the

meantime, and with the permission of his treating cardiologist, Dr.

Zuravicky, Robbins returned to work part-time as business development

manager for Laberge on April 13, 1998.  (AR 547).  Dr. Zuravicky's initial

post-operative prognosis was that Robbins' "condition [was] stable, not

likely to improve [because] the natural progression of the disease [would]

probably worsen."  (AR 556).  The doctor imposed the following

restrictions: Robbins was to "avoid stress, pressure situations [and]

physical exertion."  (AR 556).  Beginning in May 1998, First Unum began

making disability payments under the policy retroactive to April 8 (factoring

a 90-day exclusionary period).  (AR 462-63).

5

In July 1999, First Unum wrote Dr. Zuravicky and informed him that its review of his March 17, 1999 office note, (AR 360), showed that Robbins had no ischemic symptomatology, no evidence of volume overload or CHF [congestive heart failure], no symptoms of dysrhythmia or CNS [central nervous system] impairment, and that his hypertension was fairly well controlled with drug therapy. (AR 355-56, 358-59). Observing that Robbins had returned to his occupation as civil engineer on a part-time basis, and noting his asymptomatic and stable condition, First Unum declared that Robbins was able to perform his occupation on a full-time basis. (AR 355). It invited Dr. Zuravicky to comment on its assessment and to submit treatment notes and testing results that would essentially show that Robbins was unable to do so. In a responsive letter dated July 29, Dr. Zuravicky opined that the stress, pressure and long hours of a full-time work schedule would be detrimental to Robbins' health. (AR 333). The doctor cited a March 1998 cardiolite exercise stress test showing evidence of peri-infarct ischemia, and noted that while Robbins' lack of symptoms showed that his condition was adequately managed and under control, it did not suggest that he was cured. (AR 333).

On October 17, 2000, First Unum requested an updated certification

of continued disability from Robbins.  (AR 240).  In response, Robbins indicated that he had worked twenty hours per week through August 31, 2000, but was not going to return to work.  (AR 233).[4]  An October 24 form from Dr. Zuravicky again indicated that Robbins should avoid stressful and exerting situations, and that his condition, while stable, was not likely to improve.  (AR 234).  According to the doctor's contemporaneous physical capacity assessment, Robbins could occasionally lift up to twenty pounds, bend, kneel, climb stairs and reach above his shoulder, but was unable to crawl or push or pull any weight.  (AR 235).  According to Dr. Zuravicky, Robbins could perform four hours of sedentary work (which included lifting up to ten pounds, occasional standing and walking, and sitting for six to eight hours) and four hours of light work (which required lifting up to twenty pounds occasionally and ten pounds frequently, and standing six to eight hours with a degree of pushing and pulling).  (AR 236).

On November 14, 2000, the file was internally reviewed for First Unum by Lisa Keenan, RN, and Thomas Reeder, MD, to determine whether Robbins' medical record supported a limitation of part-time work

---

[4]It appears that Robbins had also indicated that he would be eligible for Social Security retirement benefits (were he not receiving long-term disability), and had an application pending for Social Security disability.  (AR 233).

and to assess other reasonable restrictions and limitations.  (AR 230-32).

The reviewers considered Robbin's pre-operative history and problems

leading to his bypass surgery in January 1998.  They also traced his post-

surgery progress, noting as follows: on January 28, 1998, Robbins had

complained of fatigue, but had no angina, shortness of breath, or irregular

heartbeat; in February, Robbins had increased his activity level, had no

evidence of CHF, ischemia, or angina, and his blood pressure was 138

over 80; and March 1998 tests revealed 60-70% stenosis of the external

carotid artery, and suggested prior anterior/inferior infarcts and peri-infarct

ischemia.  (AR 230).

The review further noted that by March 1999, Robbins had reported

to Dr. Zuravicky that he felt "better than 10 years ago," and denied, *inter*

*alia*, any chest pain, tightness, breathing difficulty, burning, edema, or

lightheadedness.  The review also considered Dr. Zuravicky's July 1999

opinion.  Subsequent office visits revealed no evidence of active ischemia.

Robbins remained physically active, and had no angina or breathing

problems.  While Robbins had recently been diagnosed with prostate

cancer, Dr. Zuravicky saw no cardiovascular contraindications to

prostatectomy or radiation treatment.

The reviewers also noted that in November 1999, cardiolite images were unremarkable, and stress test results were nondiagnostic.  According to the test-administering cardiologist, Robbins achieved a heart rate of 128 (out of a projected maximum of 136 for the test), but the likelihood of exercise-induced ischemia at the rate achieved appeared relatively low. Dr. Zuravicky's December 1999 note showed that Robbins had no evidence of active ischemia, and while his heart rate during the stress test had been submaximal, no further evaluation was warranted at that time.  In September 2000, Robbins was physically active, had no chest pain, no CHF or other complications, and was without ischemic symptoms.  He was prescribed cholesterol medication.  Finally, the reviewers considered Dr. Zuravicky's physical capacity evaluation.  (AR 231).

First Unum's reviewing staff commented that although Dr. Zuravicky had opined that the stress from Robbins' job would be detrimental to his health, there was no evidence that Robbins had ever been treated for a stress-related disorder, took psychotropic medication, or had ever been referred to a mental health clinician.  (AR 231).  They also noted that Robbins had been performing his prior occupation on a part-time basis, and that his prostate cancer diagnosis did not precipitate any cardiac

9

symptoms.  The only restriction noted was that Robbins should not lift

weight greater than twenty-five pounds.  (AR 231).

Based on the medical review, First Unum concluded that Robbins'

disability was no longer supported and that there was no reason precluding

his return to full-time work.  (AR 229).  Thereafter, by correspondence

dated November 30, 2000, First Unum informed Laberge and Robbins that

upon review of the updated medical information (and especially Dr.

Zuravicky's September 26, 2000 office note) and supplemental statements,

there was no objective data to support continued disability, and that it saw

no reason why Robbins could not perform his occupation as civil engineer.

(AR 224-28).  Accordingly, First Unum discontinued benefits.  (AR 224,

227).

On February 28, 2001, Robins, through counsel, appealed First

Unum's denial.  (AR 187-88).  Specifically, Robbins claimed that First

Unum's reliance on Dr. Zuravicky's July 26, 2000, office note had been

misplaced, and his condition taken out of context.  (AR 187).  Robbins

included two letters by Dr. Zuravicky to the New York State Office of

Temporary and Disability Assistance from November 2000 and February

2001, in which the doctor opined that because of the documented impact of

stress over people with cardiac conditions, Robbins should avoid stress and pressure situations.  (AR 193).  He further opined that Robbins' return to work would cause him undue stress and anxiety, and that "daily routine and work activity would cause him fatigue and bring pressures that may destabilize his present cardiac condition."  (AR 191).

Dr. Reeder reviewed Robbins' file and the supplemental letters from Dr. Zuravicky on May 3, 2001.  (AR 183-84).  He noted that no new diagnostic tests were provided, and that there was no mention of any change in Robbins' condition.  (AR 183).  He observed that following Robbins' surgery in 1998, he had no arrythmia, angina, or CHF.  He also considered that Robbins' November 1999 cardiolite stress test revealed no evidence of ischemia.  He further cited Dr. Zuravicky's September 2000 notation that Robbins continued to be physically active, without symptoms of ischemia, congestive heart failure, dysrhythmia, or central nervous system changes, and had a blood pressure of 120 over 70.  (AR 183).  He assessed that Robbins had excellent exercise capacity, including the physical capacity to perform his occupation.  He noted that "in fact he has been performing his original occupation part-time," and that his blood pressure and lipids were controlled with medication.  He further noted that

while Dr. Zuravicky opined that Robbins should avoid stressful situations, he inconsistently allowed him to perform his regular occupation part-time. Additionally, there was no evidence that psychological stress was causing ischemia, and that there was no objective evidence of the latter.  (AR 183-84).  He opined that Robbins' functional cardiac capacity was likely better than before revascularization, and observed that Dr. Zuravicky had not addressed any stress factors outside Robbins' workplace, had not referred him for evaluation of stress/anxiety and had not prescribed any stress reduction program.  (AR 184).  He observed that while there was conflicting evidence regarding stress and coronary artery disease, it presented no greater risk than other contributing factors, such as hyperlipidemia, diabetes, or smoking.  In Dr. Reeder's view, Dr. Zuravicky's assertions appeared preventative, since Robbins had no evidence of ischemia. Consequently, he concluded that Robbins was not impaired by coronary artery disease, hypertension or hyperlipidemia, there was no evidence that stress was impacting his functional capacity, he had apparently returned to his prior occupation, and there was no reason to limit him to part-time work. (AR 184).  Consequently, First Unum upheld its original denial of benefits. (AR 178-79).  This action followed.

12

## IV.  **Discussion**

## A.     **ERISA Standard and Scope of Review**

The parties agree that this case is governed by ERISA, which allows a plan participant to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  ERISA does not provide a standard of review of administrators' benefit determinations.  *See Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 145 (2d Cir. 2003).  However, the Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989); *see Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 123-24 (2d Cir. 2003).  As the Second Circuit has explained, "if the plan does grant such discretionary authority to its administrator, a reviewing court should defer to that authority, and evaluate the plan administrator's decisions under an 'arbitrary and capricious' standard."  *Mario v. P & C Food Mkts.*, 313 F.3d

13

758, 763 (2d Cir. 2002) (citing *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995) (in turn citing *Firestone,* 489 U.S. at 115)).  The administrator bears the burden of showing that this deferential review applies.  *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002).

The scope of judicial review under the arbitrary and capricious standard is narrow.  *See Celardo*, 318 F.3d at 146; *Peterson v. Cont'l Cas. Co.*, 282 F.3d 112, 117 (2d Cir. 2002); *Pagan*, 52 F.3d at 442.  The Second Circuit has emphasized that courts "are not free to substitute [their] own judgment for that of the [plan administrator] as if [they] were considering the issue of eligibility anew."  *Celardo*, 318 F.3d at 146 (quoting *Pagan*, 52 F.3d at 442).  A reviewing court determines "whether [the defendant's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment," and " may not upset a reasonable interpretation by the administrator."  *Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.,* 46 F.3d 1264, 1271 (2d Cir. 1995) (quotation marks and citations omitted).  Under this highly deferential standard, a court may "overturn a decision to deny benefits only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law."  *Pagan*, 52 F.3d at 442 (citation omitted); *see Kinstler v. First*

14

*Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999) (citations

omitted).  Substantial evidence is "such evidence that a reasonable mind

might accept as adequate to support the conclusion reached by the

[administrator and] ... requires more than a scintilla but less than a

preponderance."  *Celardo*, 318 F.3d at 146 (quoting *Miller v. United

Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995)).  Moreover, a court's

review under the arbitrary and capricious standard is limited to the

administrative record.  *See Miller*, 72 F.3d at 1071; *see Zervos v. Verizon

New York, Inc.*, 277 F.3d 634, 646 (2d Cir. 2002).  The plaintiff has the

burden of demonstrating that the denial of benefits was arbitrary and

capricious.  *See Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 220, 230 (2d Cir.

1995).

## B.    Structural and Analytical Framework of Review

Preliminarily, the court notes that First Unum moves for "judgment on

the administrative record."  The Second Circuit has recently observed that

"courts have either explicitly or implicitly treated such motions [which do not

appear to be authorized by the Federal Rules of Civil Procedure] ... as

motions for summary judgment under Rule 56."  *Muller v. First Unum Life

Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003) (citation omitted).  The parties

disagree on the proper construction of First Unum's motion. Robbins appears to suggest that it be treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, while First Unum proposes that the court deem it either as a motion for judgment on the pleadings under Rule 12(c), or as a bench trial on the papers.[5]

A majority of courts in this Circuit confronting motions for "judgment on the administrative record" have equated them to motions for summary judgment. *See, e.g.*, *Hammer v. First Unum Life Ins. Co.*, No. 01 Civ. 9307(RCC), 2004 WL 1900334, at *3 (S.D.N.Y. Aug. 25, 2004); *Harris v. First Unum Life Ins. Co.*, No. 02-CV-300, 2004 WL 1242415, at *3-4 (N.D.N.Y. June 4, 2004); *Charles v. First Unum Life Ins. Co.*, No. 02-CV-0748E(F), 2004 WL 963907, at *1 & n.3 (W.D.N.Y. Mar. 26, 2004) (collecting cases). Other courts have considered such motions as equivalent to motions for judgment on the pleadings and the transcript of the record under Rule 12(c). *See, e.g.*, *Rizk v. Long Term Disability Plan*

---

[5]First Unum has suggested that in accordance with *Muller*, its motion should be treated as a bench trial on the papers. *See Muller*, 341 F.3d at 124. First Unum misreads *Muller*. Under circumstances unique to *Muller*, the Circuit, for the purpose of determining its own standard applicable to the review of the district court's disposition, treated the latter as a bench trial on the papers because summary judgment motions had already been made. *See id.* Contrary to First Unum's interpretation, the Circuit specifically noted that motions of this type are usually treated as motions for summary judgment. *See id.*

*of Dun & Bradstreet Corp.*, 862 F. Supp. 783, 791 (E.D.N.Y.1994) (treating motion as one for summary judgment but noting that it would be "more properly considered as one akin to" Rule 12(c) motion); *see also Larsen v. Prudential Ins. Co. of Am.*, 151 F. Supp. 2d 167, 172 (D.Conn. 2001) (citing *Rizk* and noting that "a district court reviewing an ERISA denial of benefits is effectively functioning in an appellate capacity because it is precluded from considering new evidence.").  Yet a third group of courts have focused directly on the ERISA standard of review under *Firestone*.  *See, e.g.*, *Shutts v. First Unum Life Ins. Co.*, 310 F. Supp. 2d 489, 492, 495 (N.D.N.Y. 2004) (nominally treating the motion as one for summary judgment, but applying arbitrary and capricious standard);  *Henar v. First Unum Life Ins. Co.*, No. 02 Civ. 1570(LBS), 2002 WL 31098495, at *1 n.1, *3-4 (S.D.N.Y. Sept. 19, 2002) (directly applying arbitrary and capricious standard).

Regardless of the procedural vehicle employed, the *Firestone* standard remains applicable to the substantive determination of an administrator's denial of ERISA benefits.  The First Circuit has concluded that "there cannot possibly be a conflict between the standard of review that federal courts must apply on summary judgment and the degree of deference that such courts ultimately owe to plan administrators [under

*Firestone*]." *Leahy v. Raytheon Co.*, 315 F.3d 11, 17 (1st Cir. 2002).   The "degree of deference owed to a plan fiduciary is an underlying legal issue that remains the same through all stages of federal adjudication." *Id.* (citations omitted).[6]  The proper focus of the inquiry is "whether the aggregate evidence, viewed in the light most favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits. " *Id.* at 18.[7]  Accordingly, the court must determine whether there is a disputed material issue of fact

_____

> [6]The Court explained that
>> [i]n an ERISA benefit denial case, trial is usually not an option: in a very real sense, the district court sits more as an appellate tribunal than as a trial court.  It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary .... The fortuity that the parties chose to use cross-motions for summary judgment as the procedural vehicle to bring the case forward for judicial review of the plan administrator's determination cannot be permitted either to dilute the teachings of *Firestone* or to undercut the standard of review that the *Firestone* Court decreed for use in ERISA benefit denial cases ... This respectful standard requires deference to the findings of the plan administrator, and, thus, even under Fed.R.Civ.P. 56, does not permit a district court independently to weigh the proof.
>
> *Id.* at 17-18 (footnote and internal citations omitted).
>
> [7]This mandate is consistent with the Second Circuit's non-precedential rendition of the proper inquiry:
>> on a motion for summary judgment, the issue is not, as appellant here argues, whether an administrator was presented with conflicting evidence on matters affecting eligibility for benefits. Rather the issue is whether the administrator's decision resolving that conflict was arbitrary and capricious, *i.e.,* whether there is a material issue of fact in dispute regarding the factors considered by the administrator, and whether as a matter of law his or her decision based on those factors constitutes a clear error of judgment.
>
> *Wojciechowski v. Metro. Life Ins. Co.*, 1 Fed. Appx. 77, 79, 2001 WL 38264, at *1 (2d Cir. Jan. 12, 2001) (citing *Smith v. Ameritech*, 129 F.3d 857, 864 (6th Cir. 1997)).

as to whether the denial of benefits by First Unum was arbitrary and
capricious- *i.e.*, whether its decision was based on the proper factors, and
whether its decision constitutes a clear error of judgment as a matter of
law.

Here, having considered the preceding authority, the court declines
to wrap this motion in the fabric of any specific procedural rule.  Instead, it
adopts the following framework.  The court will consider extraneous
evidence solely for the purpose of preliminarily determining which legal
standard applies - arbitrary and capricious versus *de novo*.   Upon such
determination (in this case, as explained below, the arbitrary and capricious
standard applies), the court will limit its substantive review of First Unum's
denial of benefits to the administrative record.  The court will deem this a
*sui generis* ERISA motion for judgment following the administrative denial
of benefits.

## C.    The Arbitrary and Capricious Standard Applies

First Unum argues that the deferential "arbitrary and capricious"
standard applies, while Robbins contends that the court should review the
case *de novo*.  The relevant policy section provides that First Unum has the
"discretionary authority both to determine an employee's eligibility for

benefits and to construe the terms" of the Policy.  (AR 147).

Notwithstanding Robbins' arguments to the contrary, such language

sufficiently and clearly grants discretionary authority to First Unum, and

several district courts in this Circuit have so held.  *See Shutts v. First Unum*

*Life Ins. Co.*, 310 F. Supp. 2d 489, 495-96 (N.D.N.Y. 2004);  *Charles v.*

*First Unum Life Ins Co.*, No. 02-CV-0748E(F), 2004 WL 963907, at *2

(W.D.N.Y. Mar. 26, 2004); *Rosenthal v. First Unum Life Ins.* Co., No. 00

Civ. 3204(LMM), 2002 WL 975627, at *5-6 (S.D.N.Y. May 9, 2002); *accord*

*Henar v. First Unum Life Ins. Co.*, No. 02 Civ. 1570(LBS), 2002 WL

31098495, at *3 & n.8 (S.D.N.Y. Sept. 19, 2002).  Accordingly, First Unum

has met its burden of demonstarting that the arbitrary and capricious

standard applies, thereby limiting the court's review to the administrative

record.  *See Fay*, 287 F.3d at 104; *Miller*, 72 F.3d at 1071.

 Several ancillary arguments by Robbins warrant brief discussion.

First, apparently presuming that a straight summary judgment standard

should apply, Robbins argues that the existence of several versions of his

claims file, produced by First Unum at various stages of his administrative

appeal and this litigation, creates an issue of fact precluding judgment.  As

already explained, however, this is not the proper focus of the inquiry in a

case such as this.  Robbins claims that "a sizable difference in physical

thickness" of the different sets of documents in itself is sufficient to create a

factual dispute.  Essentially, Robbins relies either on personal insurance

policies not at issue in this case, or on duplicate copies of the same

administrative record before the court (with respect to which First Unum

has gone through the apparently painstaking task of cross-referencing,

page by page, to the stamped equivalent in the record, and which the court

has reviewed), to support his position.  Robbins' position is illogical and his

argument is frivolous.  Accordingly, it is hereby rejected for the succinct

reasons in First Unum's reply papers.

Next, Robbins attempts to argue that several terms of the Plan and

Summary Plan Description (SPD) with respect to First Unum's

discretionary authority, payment of benefits, disability definitions, etc., are

ambiguous, and should therefore be considered against First Unum.  This

contention also fails.  Upon review, not only are the terms referenced in the

Plan and SPD clear and unambiguous, but the two documents are almost

completely identical with respect to the material terms relevant here.

Moreover, as First Unum correctly points out, it is well settled in this Circuit

that the rule of *contra proferentum* does not apply upon review under the

arbitrary and capricious standard.  *See Pagan*, 52 F.3d at 443-44.

Robbins also attempts to use *Locher v. Unum Life Insurance Company of America*, 389 F.3d 288 (2d Cir. 2004) as support for his argument for *de novo* review.  There, the Second Circuit principally revisited its prior holding in *DeFelice v. American International Life Assurance Company of New York*, 112 F.3d 61 (2d Cir.1997), that a district court, in its discretion upon *de novo* review of factual issues, could deem a demonstrated conflict of interest "good cause" sufficient to warrant consideration of evidence outside the administrative record.  *See Locher*, 389 F.3d 293-95; *DeFelice*, 112 F.3d at 65-67.  *Locher* made clear that "a conflict of interest does not *per se* constitute 'good cause' to consider evidence outside of the administrative record *upon* a *de novo* review."  389 F.3d at 95 (emphasis added).  However, contrary to Robbins' contention, the Second Circuit did not clarify *when* a district court should review a case *de novo and* consider evidence outside the administrative record. Accordingly, Robbins' reliance on *Locher* is misplaced.

Finally, although Robbins has failed to specifically raise this point (and the court will deem his reference to conflict of interest as an attempt to do so), he has likewise failed to show that he is entitled to *de novo* review

based on *Sullivan v. LTV Aerospace & Defense Company*, 82 F.3d 1251 (2d Cir. 1996).  Under *Sullivan*, if a plaintiff is able to show that "the administrator was *in fact* influenced by [a] conflict of interest," the arbitrary and capricious standard "drops away," and the court reviews the case *de novo.  Id.* at 1256 (emphasis added); *see Pulvers v. First Unum Life Ins. Co.*, 210 F.3d 89, 92 (2d Cir. 2000).  The plaintiff bears the burden of making this showing.  *See Pulvers*, 210 F.3d at 92.

Upon review of the record (including, and <u>solely</u> for the instant purpose, evidence outside the administrative record), Robbins has failed to meet his burden.  First, while a defendant's dual status as claim administrator and payor supports an inference of conflict of interest, in this Circuit, the mere "fact that [First Unum] served as both plan administrator and plan insurer, although a factor to be weighed in determining whether there has been an abuse of discretion, is alone insufficient as a matter of law to trigger stricter [*de novo*] review."  *Pulvers*, 210 F.3d at 92 (internal quotation marks and citation omitted); *see also Whitney v. Empire Blue Cross & Blue Shield*, 106 F.3d 475, 476-77 (2d Cir.1997).  Second, neither the deposition testimony of a First Unum representative with respect to claims review practices and written procedures (which Robbins uses in

23

support of his *Locher* argument), nor anything in the RSA (which Robbins

claims shows deficiencies in First Unum's practices), establishes that the

consideration of his claim was *in fact* influenced by First Unum's conflict of

interest.  Nevertheless, First Unum's status as a conflicted administrator

"must be weighed as a factor in determining whether there is an abuse of

discretion[,]" *Firestone*, 489 U.S. at 115 (citation omitted), and the court will

do so here.

**D.    Analysis - First Unum's Decision to Discontinue Benefits**

First Unum argues that its determination should be upheld because it

did not make a clear error of judgment or abuse its discretion.  Specifically,

it claims that its decision is supported by: Robbins' medical records,

demonstrating that his condition had remained stable; Robbins'

performance of his own occupation on a part-time basis without incident;

and Dr. Zuravicky's treatment observations that Robbins had no symptoms

of ischemia or other cardiac complications, and that his blood pressure was

controlled with medication.  It also submits that the record is devoid of any

evidence which supports Robbins' burden of demonstrating that he was

unable to perform his regular occupation.  Robbins claims that First Unum's

decision was arbitrary and capricious.  The majority of his contentions are

conclusory and lack merit.

First, Robbins claims that the initial determination to deny benefits was not made by qualified individuals.  He claims that prior to the disability determination, every doctor to have reviewed his records had opined that he was disabled.  In a similar vein, he claims that Dr. Reeder did not review his file until May 2001.  These contentions misconstrue the administrative record, which clearly shows that the initial medical review in November 2000 was performed by both a registered nurse (Lisa Keenan) and a medical doctor (Thomas Reeder).[8]  (AR 232).  Thus, to the extent Robbins may be attempting to argue that First Unum's determination lacked proper medical foundation, his position is unfounded.  Alternatively, to the extent his argument may be generously interpreted to suggest that First Unum should have deferred to his treating physician's opinion that he was unable to perform his occupation,[9] it would likewise fail.  Under ERISA, while a plan administrator may not arbitrarily refuse to credit a claimant's reliable

_____

[8]Robbins also argues, unpersuasively, that because First Unum has failed to provide Dr. Reeder's qualifications as an expert, judgment is improper under Rule 56 because the doctor's "opinion" is inadmissible.  He provides no support for his contention, nor does it appear that he ever raised this issue with First Unum previously.  His argument also ignores the fact that this court is limited to the administrative record, of which the doctor's evaluation is a part, and incorrectly assumes that this is a traditional Rule 56 motion (in which case he should have raised his objection by way of discovery motion).

[9]As this appears to have been the major focus of his administrative appeal.

25

medical evidence, he is not required to accord any kind of deference to a

treating physician's conclusions. *Black & Decker Disability Plan v. Nord*,

538 U.S. 822, 833-34 (2003).  Moreover, "the mere existence of conflicting

evidence does not render the [administrator's] decision arbitrary or

capricious." *Rosario v. Local 32B-32J*, No. Civ. 7557(JSM), 2001 WL

930234, at *4 (S.D.N.Y. Aug. 16, 2001) (citations omitted).  Here, as

outlined above, both the initial medical review, and the one on appeal, were

based on a comprehensive evaluation of Robbins' medical records.  These

evaluations considered a variety of factors, including Robbins' lack of

symptoms of cardiac or respiratory problems on examination, and stress

test results.  This medical record provides ample support for the medical

professionals' conclusions.  Accordingly, the fact that First Unum relied on

those conclusions rather than on Dr. Zuravicky's disability opinion was not

arbitrary and capricious.

Robbins further claims that Dr. Reeder's opinion, and consequently,

First Unum's decision, is grounded on misinformation.[10]  Specifically, he

claims that the *primary* reason for the denial of benefits was that the doctor

_____

[10]Interestingly, this claimed error was not presented in Robbins' administrative appeal, and appears here for the first time.

incorrectly assumed that upon returning to work part-time, Robbins was working in his regular occupation.  Robbins submits that he was only working as manager of business development, and not as project manager of civil engineering.

This claimed misinterpretation was not the primary reason for First Unum's denial of benefits.  Upon review of the record, the decision was based on a comprehensive evaluation of Robbins' medical records.  Both the November 2000 review leading to the denial of benefits, and the subsequent one on appeal in May 2001, *see supra* Part III, properly considered Robbins' entire medical record, including the supplemental letter-opinions by Dr. Zuravicky.  On both occasions, the conclusion that Robbins was able to perform his occupation full-time was based on an analysis of the objective medical evidence of his condition.  Those records showed that Robbins had neither objective symptoms (either upon examination or with stress testing) of cardiac or respiratory complications that would render him incapable of meeting the functional requirements of his occupation.  In addition, there was no evidence that Robbins' treatment for cancer would affect his cardiac condition.  Moreover, and significantly, there was no objective evidence of any psychological symptoms or

treatment that would support Dr. Zuravicky's opinion that stress would adversely affect Robbins' condition.

While Robbins may be correct that Dr. Reeder mistakenly presumed that he had been performing his former occupation part-time, this presumption was not the determinative, primary factor in First Unum's decision.  As the record shows, the decision, in addition to the medical review, was based on a vocational report of Robbins' occupation, factoring his own description of his functions and responsibilities, as well a job analysis from Laberge.  (AR 237-39, 558-59, 563-65).  Upon review, the above, in their totality, provide substantial support for First Unum's determination.  Moreover, despite Robbins' implication to the contrary, the question is not whether he was actually working as a civil engineer, but whether he was able or unable to perform all of the material duties of this occupation.  (AR 152); *accord Couture v. UNUM Provident Corp.*, 315 F. Supp. 2d 418, 433 (S.D.N.Y. 2004) (citations omitted).

Robbins' remaining conclusory contentions either misconstrue or misrepresent the record.  His claims that First Unum failed to contact or speak with his physician, request a physical capacity evaluation, request a job description from his employer, or arrange a vocational review, are

either belied by the record, or attempt to shift his burden under the Policy to First Unum.  (AR 355-56, 235-36, 237-39, 563-65,163).  His contention that First Unum should have arranged an independent medical examination is likewise misplaced, since the available objective medical record provided sufficient support for First Unum's decision.  *See Couture*, 315 F. Supp. 2d at 432.  Finally, Robbins provides no cogent argument in support of his belated contention that First Unum failed in its legal obligation, under 29 C.F.R. § 2560.503-1(f), to provide particular reasons for its denial.  Again, this contention is belied by the record, as reflected in both First Unum's initial denial, as well as its decision on appeal.  (AR 224-26, 178-79).

## V. <u>Conclusion</u>

Based on the above, and upon careful review of the administrative record, First Unum's determination was based on substantial evidence and proper consideration of the relevant factors, and was unaffected by clear error of judgment.  Accordingly, its decision to deny disability benefits was not arbitrary and capricious, and is hereby affirmed.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Robbins' complaint against Laberge be **DISMISSED**; it is further

**ORDERED** that First Unum's motion is **GRANTED** and Robbins'

complaint against it be **DISMISSED**; it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on

the parties.

**IT IS SO ORDERED.**

Dated:      August 24, 2005
            Albany, New York

_____
United States District Court Judge